**[J-21-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN RE: PETITION OF J.M.Y. | : No. 33 WAP 2018 |
| | : |
| | : Appeal from the Order of the Superior |
| APPEAL OF: PENNSYLVANIA STATE | : Court entered February 14, 2018 at |
| POLICE | : No. 1323 WDA 2015, vacating the |
| | : Order of the Court of Common Pleas |
| | : of Allegheny County entered March |
| | : 10, 2015 at No. CC 1419 of 2014 and |
| | : remanding. |
| | : |
| | : ARGUED:  April 9, 2019 |

**OPINION**

**JUSTICE TODD**                                        **DECIDED:  OCTOBER 15, 2019**

In this appeal brought by the Pennsylvania State Police ("PSP"), we address whether the lower courts had jurisdiction to consider the challenge by Appellee J.M.Y. to his certification for involuntary mental health treatment pursuant to Section 303 of the Mental Health Procedures Act ("MHPA")[1], where his challenge was brought two years later under the Uniform Firearms Act.[2]  Concluding that the lower courts lacked jurisdiction, we reverse the order of the Superior Court.

**I. Facts and Procedural History**

The following salient facts were established at the trial court hearing on Appellee's 2014 petition to vacate and expunge his mental health treatment records, which was held on January 8, 2015 ("Expungement Hearing").  In the autumn of 2012, Appellee, a

---

[1] 50 P.S. § 7303.
[2] 18 Pa.C.S. §§ 6101-6128.

resident of Blair County, Pennsylvania, was enrolled as a freshman at the University of Pittsburgh. N.T. Expungement Hearing, 1/8/15, at 27. On September 22, 2012, Appellee attended a fraternity party at which he consumed alcoholic beverages. Appellee recalled that he subsequently left the party after being informed by some of the fraternity members that the allegedly dour countenance he exhibited while walking about campus made them reluctant to accept him as a member of their fraternity. *Id.* at 29. Sometime thereafter, he encountered University of Pittsburgh police officers who were answering a call from their emergency dispatch center that there was an intoxicated individual attempting to harm himself outside of one of the residence halls of the university.

Four police officers responded to the call, and, on arriving at the location mentioned in the dispatch, noticed Appellee, who began to walk away from them despite their request that he stop. *Id.* at 49. The officers pursued, and one of the responding officers, Sergeant Andrew Redman, testified that he tackled Appellee from behind due to his concern that Appellee might still be in possession of an instrumentality which he may have used to harm himself. Sergeant Redman also related that, once Appellee was on the ground, he spat at the officers, and that he became angry and uncooperative after being handcuffed. *Id.* at 52. Sergeant Redman additionally recounted that Appellee appeared to be intoxicated, had sustained superficial cuts to his arm and wrist area, and that other officers found a small knife attached to a money clip on the ground near Appellee. *Id.* at 51, 53.

Sergeant Redman transported Appellee to Presbyterian Hospital in Pittsburgh, from which Appellee was transferred to a nearby psychiatric treatment facility, Western Psychiatric Institute and Clinic ("WPIC"). *Id.* at 50. Sergeant Redman filled out a petition requesting an involuntary emergency examination pursuant to Section 302 of the MHPA[3]

---

[3] 50 P.S. § 7302.

to determine if Appellee was severely mentally disabled and in need of emergency treatment.[4] *Id.* at 6, 54-55. After examination, the treating physician opined that Appellee was severely mentally disabled and in need of emergency treatment; thus, in accordance with Section 302, Appellee was involuntarily committed for treatment at WPIC.

Two days later, on September 24, 2012, pursuant to Section 303(a) of the MHPA,[5] Appellee's attending psychiatrist at WPIC applied for certification of an extended 20-day period of involuntary commitment and treatment for Appellee. Although Section 303(b) requires the holding of a hearing on the application before a mental health review officer or a judge at the facility in which the involuntarily committed person is being housed within 24 hours of the application having been filed, and also directs that counsel be appointed to represent the person at that hearing, *see* 50 P.S. § 7303(b), the evidence adduced from the certified record in this matter is equivocal as to whether these mandatory requirements were met.

In this regard, at the Expungement Hearing, a "Certification" dated September 25, 2012, and executed by Mental Health Review Officer Robert Zunich, was entered as an exhibit and described. The first portion of this Certification stated that a hearing was held on the Section 303 petition, at which Appellee was present and represented by the Office of Public Defender. Incongruously, however, the form also contained a notation that the patient did not attend the hearing. N.T. Expungement Hearing, 1/8/15, at 20. The Certification directed that Appellee receive outpatient treatment for 20 days. *Id.* at 11.

---

[4] Under the version of the MHPA in effect at the time of Appellee's commitment, an individual was considered severely mentally disabled "when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a) (effective until 4/22/19). The present version of the MHPA retains this definition but also offers for certain patients, as an alternative to commitment to a mental health treatment facility, the option of assisted outpatient treatment which the MHPA details in 50 P.S. § 7301(c).
[5] 50 P.S. § 7303.

For his part, Appellee testified at the Expungement Hearing that he never attended any hearing or conference before the hearing officer who was considering the Section 303 certification application, nor was he ever advised by anyone that such a hearing was to be held on September 25, 2012. *Id.* at 33-35. Appellee did recall that he was told by the head nurse on his floor that "they were going to try to make me stay for another 20 days," and that the nurse allegedly cautioned him "not to comply with the doctor or the public defender or anybody else who tried to get [him] to sign any documents." *Id.* at 32-33. Appellee recounted that he followed that admonition and refused to sign forms presented to him by the doctor and the public defender on the morning of September 25, 2012. *Id.*

Appellee additionally denied ever having been furnished a copy of the Certification, stipulating to any facts contained therein, or agreeing to any plan of mental health treatment. *Id.* at 35-36. All that Appellee could recall was that he was told on the morning of September 25, 2012 that he could collect his things and go home. *Id.* at 36. Appellee claims to have never received any discharge summary or treatment instructions from WPIC. *Id.*

The public defender whose initials appeared on the Certification, Ernest Simon, Esq., also appeared at the Expungement Hearing. *Id.* at 16. Simon related that he did not specifically recall Appellee, but he attributed that to the sheer volume of clients — 50,000 — he has handled over the span of his career. *Id.* After reviewing the Certification and other items of record, Simon concluded that Appellee did not attend the hearing, but Simon stated that he, nevertheless, would have spoken with Appellee. *Id.* at 17. Simon noted that, as a general practice, WPIC and its parent entity UPMC preferred not to discharge patients who had been involuntarily committed for liability purposes, so they would rather have a hearing officer make the final decision regarding release. *Id.* Further,

if a witness was unavailable, WPIC's custom was to refile the petition, resulting in the patient remaining confined until the next hearing date; thus, if the treating physician and the hearing officer thought the patient would not be a danger to himself or others, reaching a stipulation allowed the patient to go home without having to wait in the hospital until the next hearing. *Id.* at 17-19. Simon also explained that, whenever a stipulated plan of outpatient treatment was agreed to by all parties as a condition for a patient's immediate release, it was the practice of the hearing officer to require that the patient enter into an agreement to continue outpatient care under a Section 303 involuntary commitment order. *Id.*

Appellee was, in fact, discharged from WPIC on September 25, 2012. Curiously, as recounted at the Expungement Hearing, his discharge papers noted that he was "discharged to home with his parents after winning his 303 hearing on 9/25/12 after police did not show up." *Id.* at 36. In this regard, Sergeant Redman testified at the Expungement Hearing that he had no recollection of being informed of any Section 303 hearing requiring his attendance. *Id.* at 54-55. Thereafter, and as we will discuss further below, Appellee did not petition the court of common pleas for review of the Certification, as permitted by Section 303(g) of the MHPA.[6]

---

[6] This subsection provides:

> **(g) Petition to Common Pleas Court.**--In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(g).

Over two years later, on November 24, 2014, Appellee filed a "Petition to Vacate and Expunge Involuntary Civil Commitment," alleging, broadly, "that there was no lawful basis for his commitment, which was effectuated through flawed procedures pursuant to Section 302 and 303 of the [MHPA]." Petition to Vacate, 11/24/14, at ¶ 12. More specifically, he claimed that his involuntary commitment under Section 302 of the MHPA was unlawful because it was not supported by adequate medical findings, and that he was denied his procedural due process rights because he was not afforded a hearing before being involuntarily committed. *Id.* at ¶¶ 24, 29. Appellee asserted that the maintenance of his commitment records served as bar to his lawful ownership and possession of a firearm under Pennsylvania and federal law.[7] *Id.* at ¶¶ 23, 28. He contended that these prohibitions, in turn, prevented him from realizing his career objective of becoming a law enforcement officer. *Id.* at ¶ 37. Appellee averred that these claims for relief "are based on the Court's inherent authority to remedy the affects [sic] of flawed commitment procedures, the statutory authority given Court's [sic] to craft

---

[7] As a matter of state law, 18 Pa.C.S. § 6105(a)(4) prohibits an individual who has been involuntarily committed to a mental institution for inpatient care and treatment from possessing or using a firearm. Similarly, under federal law, 18 U.S.C. § 922(g)(4) prohibits any person who has been committed to a mental institution from possessing "in or affecting commerce, any firearm or ammunition."

appropriate relief pursuant to [Section] 6105(f)(1)[8] and 6111.1(g)(2)[9] [of the Uniform Firearms Act] and the available remedies for the violations of [his] constitutional and civil rights." *Id.* at ¶ 16. Appellee requested that the trial court vacate his initial commitment of September 21, 2012, as well as order the expungement of all of his commitment records in the possession of treatment facilities and public agencies.

As indicated above, the trial court, by the Honorable John A. Zottola, conducted the Expungement Hearing on this petition on January 8, 2015, and, on March 10, 2015, he entered an order denying Appellee's expungement petition.[10] In his opinion prepared

---

[8] This section states:
> **(f) Other exemptions and proceedings.--**
>> (1) Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4) [prohibiting ownership or possession of a firearm by anyone who was involuntarily committed for inpatient care and treatment at a mental institution pursuant to sections 302, 303 or 304 of the MHPA], the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person

18 Pa.C.S. § 6105(f)(1).

[9] This section provides, in relevant part:
> **(g) Review by court**.--
> * * *
>> (2) A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S. § 6111.1(g)(2) (effective 3/5/15-6/19/16) (footnote omitted).

[10] The trial court also entered a subsequent order on July 27, 2015 granting Appellee's request for relief under 18 Pa.C.S. § 6105(f)(1) and lifting the Pennsylvania restriction on Appellee's right to possess a firearm. This order is not before us for review. Appellee continues to seek vacation of his involuntary commitment and expungement of his mental health treatment records in order to allow him to possess a firearm without contravening the prohibition established under federal law. *See* 18 U.S.C. § 922(g)(4).

pursuant to Pa.R.A.P. 1925(a), Judge Zottola noted that Appellee's reliance on 18 Pa.C.S. § 6111.1(g)(2) was misplaced because that section did not allow a petitioner to obtain expungement of mental health records where the commitment was pursuant to Section 303 of the MHPA. Trial Court Opinion, 10/17/15, at 2 (citing *In re Jacobs*, 15 A.3d 509 (Pa. Super. 2011) (holding that trial court had no jurisdiction under 18 Pa.C.S. § 6111.1(g) to consider a petition to expunge records of an individual's involuntary commitment under Section 303 filed five years after commitment order was entered)). Judge Zottola observed that the Superior Court in *In re Jacobs* had also determined that the "heightened due process requirements" afforded by Section 303 insured that the earlier commitment under Section 302 was valid; thus, he proceeded to examine whether the evidence was sufficient to establish that "the due process requirements of a Section 303 commitment were sufficiently met with regard to [Appellee]." *Id.* at 2-3.

Judge Zottola determined that the application for Appellee's involuntary commitment under Section 303 was timely and properly filed, and that the application contained an attestation by the attending psychiatrist that Appellee was informed that this commitment action was being taken. Judge Zottola also found that the Certification established that a hearing was held on September 25, 2012, which comported with the requirements of Section 303(b) of the MHPA that a hearing be held within 24 hours of the filing of an involuntary commitment petition. Judge Zottola observed that Appellee's absence from the hearing was noted in the Certification, which he viewed as demonstrating "that the matter was uncontested and resolved by stipulation," *id.* at 3, and further noted that Section 303 did not require that Appellee be actually present at the hearing. Judge Zottola ultimately concluded that, because the procedural requirements of Section 303 were met, Appellee's involuntary commitment under this section was valid, and Appellee was not entitled to expungement of his treatment records.

Appellee appealed to the Superior Court. A panel of that court initially affirmed the trial court's order in a divided unpublished memorandum opinion. *See In re J.M.Y.*, 1323 WDA 2015 (Pa. Super. filed Nov. 16, 2016). Subsequently, however, the full court granted reargument of that decision before an *en banc* panel, which issued a divided published opinion reversing the order of the trial court. *See In re J.M.Y.*, 179 A.3d 1139 (Pa. Super. 2018) (*en banc*).[11]

The court began its analysis with a discussion of *In re Ryan*, 784 A.2d 803 (Pa. Super. 2001) (concluding that, because an individual who was involuntarily committed under Section 303 did not receive his informal hearing on the commitment petition within 24 hours as required by Section 303(b), nor, after he petitioned the court of common pleas for review of his certification by the mental health review officer under Section 303(g), did he receive a hearing in that court within 72 hours as that provision required, his due process rights were violated, which necessitated vacating the Section 303 commitment order and expunging his treatment records). The majority viewed *In re Ryan* as establishing the proposition that, whenever the procedures set forth in the MHPA are not followed in a Section 303 commitment proceeding, the involuntarily committed person has been denied due process, and the commitment must be vacated as well as the records thereof destroyed.

The majority acknowledged the holding of *In re Jacobs*, cited by the trial court, that, once a person has been committed under Section 303, this forecloses judicial review of the Section 302 commitment; however, it interpreted *In re Ryan* as establishing an exception to this general principle for situations where the due process rights of the involuntarily committed individual were violated. Thus, the majority reasoned that,

_____

[11] The majority opinion was authored by Judge Jacqueline Shogan and joined by President Judge Susan Gantman, P.J.E. John Bender, and Judges Mary Jane Bowes, Anne Lazarus, Paula Ott, Victor Stabile and Alice Dubow. Judge Judith Olson penned a dissenting opinion.

whenever a Section 303 commitment does not furnish adequate due process to the involuntarily committed person, *In re Jacobs* does not preclude the vacation of that individual's Section 302 commitment and expungement of his or her treatment records.

The court then recited the language of Sections 303(c)-(g) of the MHPA, and concluded that, based on its review of the certified record in this matter, "the certification was not proper and, therefore, the Section 303 commitment was not valid." *In re J.M.Y.*, 179 A.3d at 1145. The court highlighted the fact that Appellee testified that he was unaware that the Section 303 commitment hearing would be held on September 23, 2012, the testimony of his public defender that Appellee did not attend the hearing, the testimony of Sergeant Redman that he did not appear at such a hearing, and the notation in the Certification that Appellee did not appear at the hearing.

The court also noted how, in its view, the Certification did not meet the requirements of Section 303(d) because it did not contain any explanation of Appellee's right to appeal to the court of common pleas under Section 303(g), nor an explanation of his right to continuing representation by counsel in pursuing such an appeal. Also, the majority pointed out that there was no evidence Appellee was ever served with the Certification as required by Section 303(e), and it called attention to the statement in the discharge summary that Appellee "won" his Section 303 hearing as further evidence the Certification was not valid. Accordingly, because it concluded Appellee's due process rights were violated, "fundamental fairness" required his Section 303 commitment be expunged. *Id.* at 1148-49.

The court further concluded that, because Appellee had also challenged the validity of his Section 302 petition, and the trial court never ruled on that question, given its conclusion that the Section 303 Certification was not valid, it was necessary to remand the matter to the trial court so that, in addition to expunging the records of Appellee's

Section 303 commitment, it could hold a hearing to determine whether there was sufficient evidence to support Appellee's Section 302 commitment.

Judge Olson dissented. She began by observing that caselaw from the Superior Court, such as *In re Jacobs*, *supra*, held that 18 Pa.C.S. § 6111.1(g), which Appellee relied upon in his petition, did not allow an individual to seek expungement of a commitment and accompanying mental health records obtained under Section 303. Judge Olson noted that Section 6111.1(g)(2) allows a trial court to review the sufficiency of the evidence supporting a Section 302 commitment and to expunge those records, but it does not confer on a trial court that same power with respect to a commitment under Section 303.

Judge Olson criticized the majority for failing to explain what other statutory authority gave any court, including the Superior Court, the jurisdiction to review the sufficiency of a Section 303 commitment which had become final over two years prior, as, from her perspective, no such statutory source existed. Judge Olson observed that Section 303(g) did give Appellee the right to appeal his Certification to the court of common pleas; however, because our Court has ruled that such a certification constitutes a final adjudication from which an appeal must be taken within 30 days, *see In re K.L.S.*, 934 A.2d 1244 (Pa. 2007), and 42 Pa.C.S. § 5571, Appellee had until October 25, 2012 to appeal his Certification to the court of common pleas, which he did not. Thus, in Judge Olson's view, the trial court had no jurisdiction to entertain Appellee's instant petition for relief, as it was filed well beyond that date. Correspondingly, Judge Olson concluded that the trial court's lack of jurisdiction to review the Section 303 certification, which was, thus, still extant, also precluded the trial court from reviewing the Section 302 certification. Hence, she would have affirmed the trial court's order dismissing Appellee's petition.

PSP[12] filed a petition for allowance of appeal of the *en banc* Superior Court's decision and order, which we granted with respect to the following issue:

> Did the Pennsylvania Superior Court err when it exercised jurisdiction to review a commitment under 50 P.S. § 7303, when no timely appeal was filed, and the challenge was brought years later under the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. §§ 6111.1(g)(2) & 6105(f)(1)?

*In re Petition of J.M.Y.*, 194 A.3d 121 (Pa. 2018) (order).

## II. Arguments of the Parties

PSP argues the Superior Court erred in exercising jurisdiction over Appellee's appeal, given that Appellee failed to file an appeal after he was committed under Section 303 of the MHPA. PSP contends the two sections under which Appellee brought this action — 18 Pa.C.S. § 6105(f)(1) and 18 Pa.C.S. § 6111.1(g) — do not allow a court to review a commitment under Section 303. PSP notes that Appellee's right to appeal his Section 303 commitment was provided by Section 303(g), and, although that provision does not set a specific time period during which an appeal must be taken, the 30-day time period in 42 Pa.C.S. § 5571(b) applies. PSP emphasizes that our Court has been clear that this time period "may not be extended in the absence of fraud or its equivalent." PSP's (Redacted) Brief at 11 (quoting *Luckenbach v. Luckenbach*, 281 A.2d 169, 169 (Pa. 1971)). Given these controlling legal principles, PSP decries the fact that the Superior Court never explained how it could grant itself jurisdiction in this matter, a point underscored by Judge Olson's dissent.

PSP also maintains that the Superior Court contravened its prior decision of *In re Jacobs, supra*, without distinguishing or overruling it. In PSP's view, *In re Jacobs* is

---

[12] The PSP has statutory responsibility to administer the Uniform Firearms Act, and, accordingly, receives notification of an individual's involuntary mental health treatment; it also maintains those records in a database for use in conducting instant background checks "to determine whether the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law." 18 Pa.C.S. § 6111.1(b)(1)(ii).

dispositive of this matter, inasmuch as that decision established that 18 Pa.C.S. § 6111.1(g) cannot be used as a vehicle to review a Section 303 commitment, due to the fact that it only confers jurisdiction on a court to review Section 302 commitments. Moreover, PSP avers, the court's decision is in tension with this Court's decision in *In re Vencil*, 152 A.3d 235 (Pa. 2017) (holding that Section 6111.1(g)(2) empowers a court to conduct only a limited review of the evidence available to the treating physician to determine if it was sufficient to support a Section 302 commitment, but this statute did not, by its terms, authorize a broader *de novo* review by the trial court of the validity of the underlying commitment, nor, given the differences in statutory language between Section 302 and Section 303, was it appropriate to interpret Section 302 by relying on caselaw involving Section 303). In PSP's view, *In re Vencil* established that Section 6111.1(g)(2) allowed nothing more than a sufficiency of the evidence review of a Section 302 commitment.

Lastly, PSP proffers that there are "substantial public policy implications" if the Superior Court's decision in this matter is not reversed. PSP's (Redacted) Brief at 15. Specifically, PSP maintains that, if individuals subject to Section 303 commitments are permitted to challenge those commitments years later in this manner, it would be at a substantial disadvantage in defending its statutory duties because Section 303 does not require the retention of the record of the hearing on the 303 commitment beyond a year. Because a successful challenge results in expungement of the commitment from its records, dangerous and unstable individuals could wrongfully obtain firearms, placing the public at great risk.[13]

---

[13] The Berks County Office of Mental Health and the Blair County Department of Social Services have filed a joint *amicus* brief in support of PSP. Therein, both entities suggest that the time for challenging a Section 303 certification should be 30 days, in accordance with Section 5571 of the Judicial Code, or, alternatively, no longer than one year, the time period for which records of the informal hearing are required to be kept under Section

Appellee responds by first suggesting that we dismiss this appeal as improvidently granted because PSP purportedly erroneously averred in its petition for allowance of appeal that Appellee's challenge to his Section 303 commitment was based on Sections 6105(f)(1) and § 6111.1(g) of the Uniform Firearms Act. Rather, Appellee maintains that only his challenge to the Section 302 commitment was brought under those statutory provisions; however, he contends that his challenge to his Section 303 commitment "was filed pursuant to his constitutional rights to due process and fundamental fairness." Appellee's Brief at 16. Appellee emphasizes that courts have consistently recognized that, because involuntary commitment constitutes a serious deprivation of liberty, it will be valid only if the due process protections reflected in the mandates of the MHPA are strictly followed. Appellee argues that, whenever these requirements are not complied with, then courts will hold the commitment unlawful and order records related to the treatment process expunged.

Here, Appellee alleges that he was denied due process for the following reasons: (1) he failed to receive a copy of the Section 303 application executed by the treating physician, or notice of the September 25, 2012 proceeding, thereby denying him his right to be present at the hearing and depriving him of his due process right to challenge the reasons proffered in the application to justify his commitment; (2) because he was not present at the informal hearing, the hearing officer never informed him of the nature of the proceedings as required by Section 303(c)(1), nor did he agree to the stipulation that was entered; (3) he was not advised of his right to have private representation at the

---

7303(b) of the MHPA. *Amici* highlight the difficulties attendant to conducting meaningful judicial review in the absence of a record of an extended involuntary commitment proceeding. *Amici* also suggest that, if there were a breakdown of the hearing process as Appellee has contended, then the proper remedy would have been for him to seek restoration of his right to appeal *nunc pro tunc*. *Amici* argue that, by failing to seek such relief and, instead, bringing the instant petition to vacate, Appellee has waived his right to now seek *nunc pro tunc* relief.

informal hearing as mandated by Section 303(b); (4) he did not receive a copy of the Certification entered by the hearing officer as required by Section 303(e); (5) the Certification failed to comport with the enumerated requirements of Section 303(d) because it did not contain a description of the treatment nor any explanation showing that the treatment was adequate and appropriate based on the information produced at the informal hearing, nor did it inform Appellee of his right to appeal under Section 303(g) and his continuing right to be represented by counsel during that process; (6) the Certification was improper because Section 303(a) allows extended involuntary treatment only in emergency situations, and there was no emergency given that he was released within 72 hours of his original commitment; and (7) Section 303(f), dealing with the effect of a Certification, authorizes inpatient treatment only at an approved facility, and this did not occur.

Appellee argues that, because of these procedural defects, he was denied his constitutional rights to due process, and, thus, no valid Section 303 commitment ever took place. In Appellee's view, the testimony of the public defender showed that the procedure which was utilized in his case was merely an artifice used to obtain Appellee's immediate release. Appellee contends that, although the involved parties may have been well-intentioned, because he had no knowledge of the proceedings, and did not consent to them, his due process rights were violated, and the Superior Court properly exercised jurisdiction, vacated the Certification, and expunged the records of his commitment.

Appellee also contends that PSP has waived its objection to the trial court's review of the Certification because it did not object to that court's exercise of jurisdiction at the time it held the hearing, but, instead, raised this matter for the first time in its appeal to the Superior Court. Appellee avers that, in any event, Section 303(g) does not provide

that an appeal to the trial court is the only means of attacking the validity of a certification, and, moreover, does not set a time limit during which such a challenge must be brought.

Further, Appellee proffers that Section 303(g) is inapplicable because that section, according to its terms, "applies only to 'a person *made subject to treatment* pursuant to this section,'" and, according to him, he was never subject to any involuntary treatment. Appellee's Brief at 43 (quoting 50 P.S. § 7303(g)) (emphasis original). In any event, according to Appellee, because he did not receive a copy of the Certification, he was unaware of his right to appeal it. Appellee additionally maintains that *In re Jacobs*, *supra*, does not control the outcome of this case, inasmuch as that case only held that 18 Pa.C.S. § 6111(g) could not be used to obtain an expungement of records of a Section 303 commitment, but it did not foreclose his present due process challenge.

### III. Analysis

We granted review to consider whether the Superior Court erred by exercising jurisdiction over Appellee's petition to vacate and review an involuntary commitment under Section 303 when no timely appeal was previously filed, and the challenge was brought two years later under two provisions of the Uniform Firearms Act, 18 Pa.C.S. §§ 6105(f)(1) and 6111.1(g)(2).[14] As this question involves a purely legal issue involving

---

[14] Before us, Appellee contends he did not rely on Sections 6105(f)(1) and 6111.1(g)(2) of the Uniform Firearms Act in his challenge to his Section 303 Certification, but, instead, was mounting a free-standing constitutional challenge, based on alleged due process violations. However, we note that those sections are specifically identified in his petition. See Petition to Vacate, 11/24/14, at ¶ 16. Moreover, both the trial court and the Superior Court below considered his challenge to be based on these statutory provisions. *See* Trial Court Opinion, 10/07/15, at 1 (recounting that Appellee filed his expungement petition "pursuant to 18 Pa.C.S. § 6105(f)(1) and 18 Pa.C.S. § 6111.1(g)(2)"); *In re J.M.Y.*, 179 A.3d at 1142 ("On November 24, 2014, Appellant filed a petition to vacate and expunge his involuntary commitment pursuant to 18 Pa.C.S. § 6105(f)(1) and 18 Pa.C.S. § 6111.1(g)(2).") (footnote omitted). We will, therefore, proceed to address them.

statutory interpretation, our standard of review is *de novo*, and our scope of review is plenary. *In re Vencil*, 152 A.3d at 241.

The crux of PSP's challenge is that the trial court and, thus, the Superior Court lacked jurisdiction to consider Appellee's request to vacate his Section 303 commitment and expunge his mental health records. It is axiomatic that subject matter jurisdiction is the indispensable foundation of a court's power to adjudicate the issues in a particular case; thus, our Court will not consider the merits of a judgment of a lower court if that court lacked jurisdiction to render the judgment. *In re Leopardi*, 532 A.2d 311, 315 (Pa. 1987) ("The power of the appellate court to modify a judgment is limited by the jurisdictional powers of the tribunal below. It can give no judgment on appeal which the lower court was incompetent to render."); *In re Petition of Acchione*, 227 A.2d 816 (Pa. 1967) (where lower court did not address the question of its jurisdiction to consider a petition and proceeded to decide its merits, our Court has the duty to determine whether that court had jurisdiction before deciding issues presented on appeal). Accordingly, the question of the subject matter jurisdiction of a court is nonwaivable, and, indeed, our Court is empowered to raise the issue *sua sponte*. *Commonwealth v. Scarborough*, 64 A.3d 602, 608 n.10 (Pa. 2013).

We begin with the statutory bases for Appellee's petition to vacate and expunge. Section 6111.1(g)(2) of the Uniform Firearms Act, provides, in relevant part:

> *A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act* may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S. § 6111.1(g)(2) (footnote omitted) (emphasis added).[15]  Thus, this section, by

its terms, empowers a court to entertain a petition testing the sufficiency of the evidence

for a Section 302 commitment; however, it does not authorize a court to consider whether

a certification for involuntary mental health treatment pursuant to Section 303 was validly

entered, which is the focus of Appellee's challenge.  *See In re Vencil*, 152 A.3d at 245 ("A

sufficiency review pursuant to section 6111.1(g)(2) of the Uniform Firearms Act is merely

a mechanism to expunge the PSP's record of an individual's 302 commitment to remove

this barrier to his or her possession and control of firearms."); *see also In re Jacobs*, 15

A.3d at 511 ("18 Pa.C.S.A. § 6111.1(g) provides no opportunity to obtain expunction of

mental health records pursuant to a commitment under [Section 303].").  We may not

rewrite this section to authorize review of Section 303 involuntary commitments when the

legislature has chosen not to include such a review process.  *See In re Vencil*, 152 A.3d

at 243-44 (interpreting absence from MHPA of an appeals process for Section 302

commitments as a deliberate legislative choice, inasmuch as the General Assembly could

have supplied one if it chose to); *see also In re Fortieth Statewide Investigating Grand

Jury*, 197 A.3d 712, 721 (Pa. 2018) (refusing to rewrite the Investigating Grand Jury Act

to add hearing and evidentiary procedures which the legislature did not include).

Consequently, Section 6111.1(g)(2) did not furnish jurisdiction for either the trial court or

the Superior Court to consider the merits of Appellee's petition.

Likewise, Section 6105(f)(1) of the Uniform Firearms Act confers no such

jurisdiction.  This section provides:

> Upon application to the court of common pleas under this
> subsection by an applicant subject to the prohibitions under
> subsection (c)(4)[16], the court may grant such relief as it

---

[15] An amended version of Section 6111.1 took effect on June 20, 2016, but it did not alter the text of Section 6111.1(g)(2).
[16] Subsection (c)(4) states:

deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

18 Pa.C.S. § 6105(f)(1).

First, this section, by its terms, merely allows a person who is precluded from possessing or owning firearms due to a prior involuntary mental health commitment to seek to lift that prohibition. However, it does not provide a basis to challenge the commitment itself. Second, this section is silent as to the expunction of the prior commitment. Rather, it assumes the existence and validity of a prior involuntary commitment, and, if the applicant is successful, as Appellee was in the instant case[17], the applicant's right to possess or own firearms under Pennsylvania law is restored *prospectively*.

Nor do we find the proviso in Section 6105(f)(1) which allows a court to "grant such relief as it deems appropriate," 18 Pa.C.S. § 6105(f)(1), as encompassing the power to order expungement of involuntary mental health commitment records whenever an individual petitions for restoration of his or her right to own or possess firearms. In *In re Keyes*, 83 A.3d 1016 (Pa. Super. 2013), the petitioner argued that the trial court had authority to expunge records of his prior involuntary commitment under this statutory language. However, the Superior Court rejected this argument, noting that, if it were to find that this language conferred a power on a trial court to expunge mental health

---

A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

18 Pa.C.S. § 6105(c)(4) (footnote omitted).
[17] *See supra* note 10.

records, then Section 6111.1(g), which allows review of Section 302 commitments and expungement, would be "mere surplusage," as *any* expungement proceeding, including those involving Section 302 commitments, could be brought under Section 6105(f)(1). *Id.* at 1023. We find the Superior Court's interpretation in this regard to be sound.

In presently renouncing reliance on these statutory provisions[18], Appellee seems to be arguing that, because he is raising due process challenges to his Section 303 commitment procedure, such challenges may be brought at any time, and in the manner he chose. We reject such a notion. As the learned Judge Benjamin Cardozo aptly noted: "Jurisdiction exists that rights may be maintained. Rights are not maintained that jurisdiction may exist." *Berkovitz v. Arbib & Houlberg*, 130 N.E. 288, 291 (N.Y. 1921). Merely because Appellee presented claims of a constitutional dimension did not confer jurisdiction on a court to adjudicate them. Even constitutional challenges must be brought in a manner specified by law, and in a timely fashion, or else they are waived. *See Commonwealth v. Knox*, 190 A.3d 1146, 1152 (Pa. 2018) (observing that "[c]onstitutional claims are subject to waiver regardless of their importance").

Moreover, Section 303(g) of the MHPA furnished a means for Appellee to raise due process challenges to the commitment procedure which led to the entry of the Certification.[19] This section provides:

> **(g) Petition to Common Pleas Court.**--In all cases in which the hearing was conducted by a mental health review officer, a person made *subject to treatment* pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court

---

[18] *See supra* note 14.

[19] In alleging due process violations in his petition, Appellee did not cite to any specific provisions of the Pennsylvania or United States Constitution which he claims were violated.

may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(g) (emphasis added).[20] Thus, Appellee had the right under this section to petition the court of common pleas for review of his Certification by the mental health review officer, because the Certification directed him to receive 20 days of outpatient treatment, and, thus, Appellee was "subject to treatment" under Section 303(g).[21]

Although it is true, as Appellee argues, that Section 303(g) does not specify a time within which such a petition for review must be brought, we reject his contention that the time period for filing a petition under this section is essentially boundless. As our Court recognized in *In re K.L.S.*, "[i]n proceedings under the MHPA, the case is . . . heard by the [mental health review officer], a law-trained, quasi-judicial officer who prepares a certification of findings 'as to the reasons that extended involuntary treatment is necessary [and] a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing.'" 934 A.2d at 1247-48 (quoting 50 P.S. § 7303(d)) (second alteration original). We further held therein that the certification of the mental health

---

[20] The MHPA also contains an identical provision at 50 P.S. § 7109(b). Section 7109, generally, delineates the requirements for appointment as a mental health review officer and the duties thereof.

[21] We reject Appellee's argument that this right of appeal is only triggered by an involuntary commitment to a mental health facility, as Section 303(g) does not contain any such limitation, and the MHPA did not at the time of Appellee's Certification, nor does it now, mandate involuntary commitment for every patient, but, rather directs that the patient be treated in accordance with his or her specific needs. *See* 50 P.S. § 7102 ("[I]n every case, the least restrictions consistent with adequate treatment shall be employed."); *id.* § 7107 (effective until 4/21/19) ("Individualized treatment plan means a plan of treatment formulated for a particular person in a program appropriate to his specific needs. . . . To the extent possible, the plan shall be made with the cooperation, understanding and consent of the person in treatment, and shall impose the least restrictive alternative consistent with affording the person adequate treatment for his condition.").

review officer, as a quasi-judicial officer, constitutes a "final adjudication or determination" of a local agency or a Commonwealth agency. *Id.* at 1248. Consequently, inasmuch as a mental health review officer is considered a local agency or Commonwealth agency, the mental health review officer must be classified as a government unit, *see* 42 Pa.C.S. § 102 (defining government unit, *inter alia*, as "any government agency"), and, under Section 5571(b) of the Judicial Code, "an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken," 42 Pa.C.S. § 5571(b). Appellee, therefore, had 30 days from the date of the mental health review officer's Certification to petition the court of common pleas for review of any due process or other challenges to the Certification. As he did not do so, but instead filed the instant petition over two years later, neither the court of common pleas nor the Superior Court had jurisdiction to consider the merits of these claims.[22] Accordingly, we must reverse the order of the Superior Court, which itself reversed the common pleas court's order dismissing Appellee's petition.

However, our holding should not be viewed as dismissing the seriousness of Appellee's allegations that the procedural requirements of Section 303 – such as notice of the hearing, his outpatient treatment plan, and his right to a counseled petition for review of the hearing officer's Certification – were not followed in his case. Further, nothing in this Opinion should be construed as constraining Appellee's present ability to

---

[22] The Superior Court's decision in *In re Ryan*, relied on by the Superior Court majority below, did not purport to alter these procedural limitations for bringing due process challenges to proceedings under the MHPA. In that case, the petitioner, unlike Appellee, *timely* filed his petition for review in accordance with the requirements of Section 303(g) of the MHPA. Because the petitioner properly raised and preserved issues of whether the procedures governing Section 303 commitments were followed in his case, there was no question that the Superior Court had jurisdiction to adjudicate his appeal, and to render its ultimate decision that the failure to follow the explicit requirements of Section 303 governing the conduct of involuntary commitment proceedings constituted a due process violation requiring the vacation of a Section 303(b) certification and expungement of related records.

petition for review of the Certification *nunc pro tunc*, based on these alleged procedural irregularities.  *See generally Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty.*, 746 A.2d 581, 584 (Pa. 2000) ("[I]n civil cases, an appeal *nunc pro tunc* is granted only where there was fraud or a breakdown in the court's operations through a default of its officers.") (internal quotation marks omitted).

Order reversed.  Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty, Wecht and Mundy join the opinion.

Chief Justice Saylor files a concurring opinion.