64 A.3d 602

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Milton SCARBOROUGH, Appellee.**

Supreme Court of Pennsylvania.

Argued May 8, 2012.

March 22, 2013.

354

Eric Ross Linhardt, Williamsport, Kenneth A. Osokow, Lycoming County District Attorney's Office, for Appellant.

David Rudovsky, Kairys, Rudovsky, Messing & Feinberg, Philadelphia, Leonard Sosnov, Harrisburg, for Appellee.

Before: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

The Commonwealth appeals from the order of the Superior Court quashing, as interlocutory, the Commonwealth's appeal

from an order of the trial court granting Appellee Milton Scarborough's motion for post-conviction DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9543.1. After careful review, we conclude that an order granting a motion for post-conviction DNA testing pursuant to Section 9543.1 is a final order under Pa.R.A.P. 341, and, therefore, we reverse the Superior Court's order and remand to that court to consider the merits of the issues presented in the Commonwealth's appeal.

Appellee's underlying criminal convictions arise out of the robbery and stabbing deaths of a mother and her two children in their Lycoming County home on the night of August 5, 1976. Appellee was convicted by a jury of burglary, robbery, theft, conspiracy, and three counts of murder in the third degree. He received an aggregate sentence of 30–60 years incarceration. Appellee pursued a direct appeal, and his convictions and sentence were affirmed by the Superior Court. Appellee next pursued a petition for collateral relief under the former Post Conviction Hearing Act, which was denied by the trial court, and the denial was upheld by the Superior Court. Appellee's petition for discretionary review from our Court was also denied.

On June 3, 2008, Appellee filed a petition pursuant to Section 9543 of the PCRA raising two claims for collateral relief from his judgment of sentence—a claim of "after-discovered" exculpatory evidence and an alleged *Brady* [1] violation. That same day, Appellee also filed a separate motion pursuant to Section 9543.1 of the PCRA seeking post-conviction DNA testing of a palm print lifted from a lamp pulled down during the commission of the crime, fingernail clippings of the victims, and a blood print found near the bodies of the two children. Due to the recusal of all members of the Lycoming County bench, the Honorable Robert E. Dalton, President Judge of Tioga County, was specially appointed by our Court to adjudicate both matters.

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

With respect to the PCRA petition, Judge Dalton ruled that it was untimely, and he dismissed it. The Superior Court affirmed, and Appellee has filed a petition for allocatur with our Court concerning that decision, which was denied on February 6, 2013. In regard to Appellee's motion for DNA testing, Judge Dalton conducted an evidentiary hearing, at which testimony from a latent fingerprint examiner was presented. After the hearing, Judge Dalton granted Appellee's motion and ordered DNA testing of the palm print, the fingernail clippings, and the blood print.[2, 3]

In his opinion in support of the order granting DNA testing ("DNA testing order"), Judge Dalton noted that there was trial testimony which indicated that Appellee was the one who pulled the lamp down during the commission of the crime—a fact the Commonwealth relied upon heavily to link him to the crimes. Judge Dalton observed that "[i]f the DNA present on the palm print that was lifted by the investigators and deposited during the commission of the crime does not match that of [Appellee], then the District Attorney's theory of its case against him is called into question." Trial Court Opinion, 10/28/09, at 5. Judge Dalton reasoned that, if the requested testing revealed a lack of Appellee's DNA on the lamp, even though Appellee was alleged to have touched it, then such test results could be exculpatory to Appellee.

The Commonwealth filed a notice of appeal from the DNA testing order, arguing that the trial court used an incorrect standard in evaluating Appellee's request for DNA testing— namely, that the trial court considered only whether the DNA testing could be favorable to Appellee, not whether it could establish his actual innocence, which the Commonwealth contended was the proper standard. Judge Dalton, in his opinion prepared pursuant to Pa.R.A.P.1925(a), noted the lack of any cases in which the Commonwealth appealed an order granting DNA testing, and he suggested that the DNA testing order was "perhaps" interlocutory. Trial Court Opinion, 10/28/09, at

**2.** The requested DNA testing methods were not available at the time of Appellee's original trial.

**3.** The testing was to be completed at Appellee's expense.

1–2. Even so, the Commonwealth did not request Judge Dalton amend his order to include the necessary certification required by 42 Pa.C.S.A. § 702(b)[4] for a permissive appeal from an interlocutory order, nor did the Commonwealth apply to the Superior Court for permission to appeal the order as required by Pa.R.A.P. 1311(b).[5]

Appellee filed an application in the Superior Court under Pa.R.A.P. 123 seeking to have the Commonwealth's appeal quashed or dismissed on the grounds that it was taken from an interlocutory order. The Commonwealth did not file a response to this application; however, it asserted in the statement of jurisdiction in its brief to the Superior Court that Judge Dalton's order granting the DNA testing was final and appealable. The Superior Court subsequently quashed the appeal in a published opinion authored by Judge Colville.[6] *Commonwealth v. Scarborough*, 9 A.3d 206 (Pa.Super.2010).

The court found that the DNA testing order was not a final order because: (1) it was not defined as a final order by statute; (2) the order did not dispose of all claims and parties as, in its view, "DNA testing is merely a precursor to, or attendant to, [Appellee's] PCRA petition for relief from his

**4.** This statutory subsection provides:
   **Interlocutory appeals by permission.**—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.
   42 Pa.C.S.A. § 702(b).

**5.** This subsection of the appellate rule states, in pertinent part:
   **Petition for permission to appeal.** Permission to appeal from an interlocutory order containing the statement prescribed by 42 Pa.C.S. § 702(b) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order in the lower court or other government unit....
   Pa.R.A.P. Rule 1311(b)

**6.** Judge Colville's Majority Opinion was joined by Judge Allen, and Judge Mundy concurred in the result.

judgment of sentence," *Scarborough*, 9 A.3d at 212; and (3) the trial court did not expressly find the DNA testing order to be final. The court further opined that the DNA testing order was not final as it did not put anyone out of court, nor did it resolve the entire case as "it leaves open for resolution whatever claims for relief [Appellee] may pursue via the PCRA once he is notified of the test results." *Id.*

The court also determined that the DNA testing order was not one of the orders enumerated in the appellate rules as an interlocutory order appealable as of right pursuant to Pa. R.A.P. 311(a), nor was it an order which terminated or substantially handicapped the prosecution of a criminal case which the Commonwealth could appeal as of right under Pa.R.A.P. 311(d), since the underlying prosecution in the case concluded many years before.[7] Additionally, the court noted that the appeal which the Commonwealth took from the entry of the DNA testing order could not be classified as a permissive interlocutory appeal because the Commonwealth, as noted above, did not obtain the requisite certification from the trial court or the Superior Court.

Finally, the court considered whether the DNA testing order could be deemed a collateral order which was immediately appealable.[8] The court likened the DNA testing order to a discovery order in a criminal matter, in that the DNA testing order was "separable from the resolution of the main action—that is, [Appellee's] intended claim for PCRA relief which, if the test results are favorable to him, will apparently be based on after-discovered exculpatory DNA evidence pursuant to 42 Pa.C.S. § 9543(a)(2)(vi)." *Scarborough*, 9 A.3d at 213. However, the court found the DNA testing order failed the second requirement of a collateral order, i.e., that it was too important to be denied review since it involves an interest

---

7. *See* Pa.R.A.P. 311 (enumerating types of orders which are appealable as of right).

8. Pa.R.A.P. 313(b) defines a collateral order as one that is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

"deeply rooted in public policy." *See Geniviva v. Frisk*, 555 Pa. 589, 599, 725 A.2d 1209, 1214 (1999). In the court's view, the Commonwealth, through its appeal, was pursuing a "perceived interest in preventing a convicted person from having relatively new scientific tests performed on evidence that was related to the investigation and prosecution of the case against him." *Scarborough*, 9 A.3d at 213. The court did not find this perceived interest to be deeply embedded in public policy, particularly in light of the strong countervailing public interest it recognized as being served by DNA testing—ending of the incarceration of wrongfully convicted individuals.

The court additionally found that the DNA testing order, in and of itself, did not grant Appellee any relief from his judgment of sentence, and the results of the testing have "little or no legal significance unless they are eventually made part of a timely and properly filed PCRA petition." *Id.* Hence, the court reasoned that, if Appellee pursued such a subsequent PCRA petition, the Commonwealth could then oppose the petition and seek appellate review from any unfavorable order ultimately entered. For all of these reasons, the court quashed the Commonwealth's appeal for lack of jurisdiction.

The Commonwealth filed a petition for allowance of appeal of the Superior Court's order, contending the DNA testing order was a final order which was immediately appealable. Our Court granted the petition for allowance of appeal, treated as a petition for review.[9] We, therefore, now consider the

---

9. At the time the Commonwealth filed its petition, the proper procedure to challenge an order of an intermediate appellate court quashing an appeal as interlocutory was via filing a petition for review in our Court. *Vaccone v. Syken*, 587 Pa. 380, 384 n. 2, 899 A.2d 1103, 1106 n. 2 (2006). Effective March 7, 2011, the Rules of Appellate Procedure were amended to provide that such challenges should proceed by petition for allowance of appeal. *See* Pa.R.A.P. 1114(7) and Note. Contrary to Appellee's assertion, the failure of the Commonwealth to previously seek permission in the Superior Court to appeal from the trial court order does not preclude us from exercising jurisdiction in this matter under *Commonwealth v. Dennis*, 580 Pa. 95, 859 A.2d 1270 (2004), since, in that case, the Commonwealth filed a petition for review in our court **directly** from an order of the trial court without first seeking the trial court's certification of the order as interlocutory.

question of whether an order granting a motion for post-conviction DNA testing pursuant to 42 Pa.C.S.A. § 9543 is a final order from which an immediate appeal to the Superior Court may be taken.

We begin by reviewing the arguments of the parties. The Commonwealth likens the circumstances of this case to those which transpired in *Commonwealth v. Romolini*, 384 Pa.Super. 117, 557 A.2d 1073, 1076 (1989), a case in which the Superior Court held that a trial court's order granting a defendant parole was final and appealable by the Commonwealth under Pa.R.A.P. 341, as the trial court had concluded its treatment of the defendant's petition for parole by fully answering the question presented by the petition—defendant's eligibility for parole—and there were no further proceedings in which the Commonwealth could pursue any challenges to the granting of parole.

The Commonwealth contends that, analogous to *Romolini*, the DNA testing order constituted the trial court's final determination of the only question presented by Appellee's petition—his eligibility for DNA testing—and no further proceedings existed in which the Commonwealth could challenge the grant of DNA testing. The Commonwealth stresses that the sole claim presented by Appellee in his motion for DNA testing, and pending before the trial court at the time of entry of its order, was whether DNA testing should be granted; thus, in its view, the DNA testing order disposed of this claim and, indeed, the entire case since, according to the Commonwealth, the underlying criminal case had ended, and Appellee was merely trying to resurrect it utilizing these means. Thus, the Commonwealth asserts that the DNA testing order must be considered a final order under Pa.R.A.P. 341.

The Commonwealth additionally argues that the Superior Court has held that a motion for DNA testing filed under Section 9543.1, even though a separate and distinct claim for relief from other types of claims found elsewhere in the

Here, as in *Vaccone,* the petition for review to our Court involves an order of an intermediate appellate court quashing an appeal as interlocutory and, thus, we have jurisdiction to consider the petition.

PCRA, is, nevertheless, considered "a post-conviction petition under the PCRA." *See* Commonwealth's Brief at 13 (citing, e.g., *Commonwealth v. Williams*, 909 A.2d 383, 384 n. 1 (Pa.Super.2006)). The Commonwealth notes that, under Pa. R.Crim.P. 910, any order "granting, denying, dismissing or otherwise finally disposing of a petition for postconviction collateral relief shall constitute a final order for purposes of appeal." Commonwealth's Brief at 13 (quoting Pa.R.Crim.P. 910). The Commonwealth reasons that, because the motion for DNA testing is a petition for post-conviction relief, the DNA testing order is final under Rule 910, and, thus, an independent basis (from Pa.R.A.P. 341) for concluding the DNA testing order is final and reviewable on appeal.

In contrast, Appellee argues the DNA testing order may not be regarded as final since, in Appellee's view, a motion for DNA testing is merely "a first step" a convicted inmate takes to obtain evidence that can provide a basis for the filing of a subsequent PCRA petition under 42 Pa.C.S.A. § 9543(a)(2)(vi). Appellee's Brief at 11. Appellee argues that, if the DNA testing petition is denied, the litigation is over; however, if it is granted, then it is merely a preliminary step which "might support a later claim for post-conviction relief." *Id.* at 12. Appellee notes that DNA test results may, in fact, provide no basis for filing a subsequent PCRA petition as they may not affect the validity of the conviction, or they may be inconclusive or even incriminating.

Appellee also disputes that the DNA testing order is final under Rule 910. Appellee notes that Section 9543.1, as interpreted by the Superior Court, provides that "an application for DNA testing should be made in a motion, **not** in a PCRA petition." Appellee's Brief at 13 (quoting *Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa.Super.2011)) (emphasis original). Appellee contends that the Commonwealth has incorrectly characterized a motion for DNA testing as a PCRA "petition for relief". Appellee's Brief at 13. Appellee argues that claims brought under the PCRA are, as our Court has recognized in *Commonwealth v. Porter*, 613 Pa. 510, 35 A.3d 4 (2012), assertions of a violation of rights that entitle a petition-

er to relief from the underlying criminal conviction, and an order addressing those claims becomes final and appealable under Rule 910 whenever the trial court is finished with them. Endorsing the reasoning of the Superior Court below, Appellee likens the DNA testing order to a discovery order entered in proceeding under the PCRA which is interlocutory, and, thus, not appealable, since there is no general right of appeal in a PCRA proceeding by a losing party before the disposition of the entire case. Accordingly, Appellee maintains that, because Rule 910 speaks only of orders which grant or finally dispose of a petition for collateral relief, it does not apply to the present order which merely granted Appellee's motion for DNA testing.

Appellee proffers that there is no compelling policy reason to grant the Commonwealth an immediate appeal since he remains incarcerated and has received no relief from his underlying conviction and attendant judgment of sentence. Appellee suggests that the Commonwealth still has an avenue of appeal open to it, should Appellee file a PCRA petition under 42 Pa.C.S.A. § 9543(a)(2)(vi) based on the test results: it can raise all of these issues in opposition to the petition, and it may appeal from any final order which grants relief to Appellee based on the results of the DNA testing. Appellee also points out that deferring review of this issue until entry of a final order regarding a PCRA petition based on the DNA test results is in accord with our policy of discouraging piecemeal appeals which disfavor indigent litigants such as himself who must expend resources and suffer delay as the result of multiple appeals.

Finally, Appellee claims that, even though a DNA testing order is interlocutory, the Commonwealth can always petition the trial court for permission to appeal the order under 42 Pa.C.S.A. § 702. Appellee adds that, since the Commonwealth did not do so in this case, the Superior Court had no jurisdiction to consider the appeal, and it was, therefore, properly quashed.

■ Considering the question which our Court accepted for review, we begin by noting that the question of whether a DNA testing order constitutes a final order immediately appealable to the Superior Court is a question of law, and, thus, our standard of review is *de novo*, and our scope of review is plenary.[10] *Commonwealth v. White*, 589 Pa. 642, 650 n. 1, 910 A.2d 648, 652 n. 1 (2006).

■ As a general rule, subject to some exceptions noted by the Superior Court herein, but not relevant to our resolution of the narrow question we are presently considering, appellate courts have jurisdiction only over appeals taken from a final order. *Id.* at 650, 910 A.2d at 653. Pa.R.A.P. 341(b) defines a final order as follows:

**Definition of final order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) is expressly defined as a final order by statute; or

(3) is entered as a final order pursuant to subdivision (c) of this rule.

10. Appellee contends the Commonwealth waived any challenge to the Superior Court's resolution of the jurisdictional issue. Appellee notes that he raised the jurisdictional issue in the Superior Court by filing a motion to dismiss the Commonwealth's appeal, and in the motion he specifically asserted that the Commonwealth was attempting to appeal from an interlocutory order, but the Commonwealth did not make a responsive filing to the motion. Appellee states that he reiterated this same assertion in his brief and requested that the appeal be quashed, but the Commonwealth filed no reply brief addressing this matter. Appellee suggests that the Commonwealth's current jurisdictional arguments are, therefore, waived for failure to raise them in the Superior Court.

While we note the Commonwealth failed to file a response to Appellee's motion to quash filed in the Superior Court, as discussed above, the Commonwealth did assert in its statement of jurisdiction in its brief filed in that court, consistent with its current position, that the DNA testing order was final, and jurisdiction was proper for that reason. Further, as our Court has held, "[t]he question of the appealability of an order goes to the jurisdiction of the Court requested to entertain the question. Questions relating to jurisdiction are not waived by the failure of the parties to raise them, and may properly be raised by the court *sua sponte*." *Fried v. Fried*, 509 Pa. 89, 91–92, 501 A.2d 211, 212 (1985) (citations omitted). Thus, we will not find the Commonwealth's arguments to be waived. *See id.* (considering arguments of party relating to appealability of trial court order, even though raised for the first time in brief to our Court).

Pa.R.A.P. Rule 341(b). This rule is interpreted in accordance with the plain language of its terms. *Nationwide Mut. Ins. Co. v. Wickett*, 563 Pa. 595, 601 n. 6, 763 A.2d 813, 817 n. 6 (2000).

As recited above, the substance of the parties' arguments is centered on subdivision (b)(1) of this rule—whether the DNA testing order is final because it "disposes of all claims and of all parties." [11] Our Court also has characterized a final order as "one which ends the litigation or disposes of the entire case." *Ben v. Schwartz*, 556 Pa. 475, 481, 729 A.2d 547, 550 (1999). The "litigation" or "the entire case" in the instant matter is the motion for post-conviction DNA testing filed by Appellee. This statutory mechanism which affords convicted individuals access to DNA testing was created by the legislature via its passage of Section 9543.1 in 2001.[12] Although, when the legislature enacted Section 9543.1, it placed this provision within the larger statutory framework of the

---

**11.** The parties do not presently suggest that subdivisions (b)(2), (b)(3), or any other subdivision of Rule 341 are applicable to the resolution of this matter. Inasmuch as our review confirms the Superior Court's specific finding that subdivisions (b)(2) and (b)(3) of Rule 341 do not apply to render the DNA testing order final, as the DNA testing order has not been expressly defined as a final order by any statute, nor did the trial court certify the DNA testing order as immediately appealable under Pa.R.A.P. 341(c), we will, accordingly, focus our discussion on whether the DNA testing order meets the requirements for finality set forth in Pa.R.A.P. 341(b)(2).

**12.** As noted by a principal legislative sponsor of Section 9543.1, Senator Stewart Greenleaf, the Chairman of the Pennsylvania Senate Judiciary Committee, Section 9543.1:

came out of the hearing of the Committee on Judiciary on the death penalty moratorium, and as we were going through that process, we found that Pennsylvania does not have easy access to DNA testing for those persons on death row or other crimes they are charged with to have access to that type of testing. This legislation would provide that testing and provide a payment process for it and a process in which an individual could easily present their case, and a judge could then decide whether they would be allowed to have the testing or not, and they would be allowed to have it if the evidence would prove their innocence, or if you are on death row to prove that they were innocent of the crime and/or that an aggravating circumstance was not justified.

Pennsylvania Legislative Journal–Senate, June 19, 2001 at 745 (remarks of Senator Stewart Greenleaf).

PCRA—the considerable majority of which was enacted in its current form by the legislature in 1995—the litigation of a motion for DNA testing under Section 9543.1 is, in substance, a wholly separate proceeding from litigation of a PCRA petition.[13] The sole claim which a convicted individual may make in a motion filed pursuant to Section 9543.1 is that he or she is entitled to DNA testing of evidence "related to the investigation or prosecution that resulted in the judgment of conviction." *See* 42 Pa.C.S.A. § 9543.1(a)(1). In order to obtain this DNA testing, a movant, such as Appellee, who has been convicted of a non-capital offense, must make a *prima fâcie* case demonstrating both that the identity of the perpetrator of the crime was at issue at trial, and that DNA testing of the specific evidence identified in the motion, assuming it yields exculpatory results, would establish his or her actual innocence of the crime for which he or she was convicted. *See id.* § 9543.1(c)(3)(i) and (ii). If the movant is successful in making this showing and the court additionally determines the requirements of 42 Pa.C.S.A. § 9543.1(d)(1) have been met, as well as determines the testing is not barred by the provisions of 42 Pa.C.S.A. § 9543.1(d)(2), the relief the movant receives is the trial court's ordering of the requested DNA testing on the particular evidence specified in the motion, *see id.* § 9543.1(d)(1).

By contrast, a convicted individual who files a PCRA petition is bringing a collateral challenge to his or her "conviction or sentence" and is entitled to raise in his or her petition a number of specific claims, provided they have not been previously litigated or waived, which are pertinent to the criminal conviction or imposition of sentence. *See id.* § 9543(a)(2). A PCRA petitioner must plead and then prove those claims by a preponderance of the evidence. *See id.* § 9543(a). The relief

13. Because of this clear difference in statutory nomenclature used by the legislature, we decline to find, as the Commonwealth urges, that an order resolving a **motion** for DNA testing is encompassed within the class of orders described in Pa.R.Crim.P. 910, which, by its plain terms, refers to orders granting or denying a PCRA **petition**. *See* Pa.R.Crim.P. 910 ("An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal.")

which a PCRA petitioner may receive as the result of the PCRA petition is a new trial, discharge from custody, correction of sentence, or resentencing. *See id.* § 9546.

Consequently, because the **only** claim at issue in a motion for post-conviction DNA testing is a convicted individual's eligibility for such testing under the aforementioned provisions of Section 9543.1, when the trial court enters an order either granting or denying the testing, the litigation under this section is at an end: the sole claim between the parties—the Commonwealth and the movant—has been addressed by the trial court and finally disposed of. Thus, under the plain language of Rule 341(b), because a trial court order granting or denying the motion for DNA testing disposes of all claims raised by all parties to the litigation, it is, therefore, a final order. *See Commonwealth v. Bryant,* 566 Pa. 307, 310–11, 780 A.2d 646, 648 (2001) (holding that, pursuant to Pa.R.A.P. 341(b), order of PCRA court which "fully and finally disposed of all issues before it" was final and immediately appealable). In the instant matter, the Commonwealth, as the party which opposed the motion but did not prevail, may thus take an immediate appeal from that final order.

Although Section 9543.1(f)(1) permits a convicted individual who successfully obtains DNA testing to, at his or her option, file a **subsequent** PCRA petition based on the test results, it does so by explicitly referencing Section 9543(a)(2)(vi) of the PCRA and directing that the petition be filed pursuant to that subsection. See 42 Pa.C.S.A. § 9543.1(f)(1) ("After the DNA testing conducted under this section has been completed, the applicant **may** ... petition to the court for postconviction relief pursuant to Section 9543(a)(2)(vi).") (emphasis added). Hence, the filing of a later PCRA petition by the successful movant constitutes the commencement of separate and new litigation, which, as discussed above, has as its ultimate object the grant of a new trial, discharge from the underlying conviction, or modification of the petitioner's sentence, and this subsequent PCRA petition will be considered according to the standards for obtaining relief under Section 9543(a)(2)(vi) of the PCRA. *See* 42 Pa.C.S.A. § 9543.1(f)(3) ("In any hearing

on a petition for postconviction relief [based on the results of the DNA testing], the court shall determine whether the exculpatory evidence resulting from the DNA testing conducted under this section would have changed the outcome of the trial as required by section 9543(a)(2)(vi)").

It is because of this explicit statutory demarcation between the culmination of the DNA testing litigation and the commencement of the litigation of a later-filed PCRA petition that we must reject the Superior Court's analogy of an order granting DNA testing to a trial court's ruling on a discovery motion during the pendency of a PCRA petition. In the latter situation, a trial court's order granting a PCRA petitioner's discovery request does not end the PCRA proceedings, as, after discovery has been conducted, further litigation on the claims raised in the petition will inevitably follow. *See* 42 Pa.C.S.A. § 9543(a) (requiring PCRA petitioner to "plead and prove by a preponderance of the evidence" the requirements enumerated in 42 Pa.C.S.A. § 9543(a)(1) and (2)). Consequently, the discovery order is but a step in the overall litigation process of the merits of the underlying substantive claims raised in the PCRA petition. However, as discussed above, an order granting a motion for DNA testing terminates the existing process between the parties and decides the merits of the sole claim raised in the motion.

We further note, as Appellee has recognized, the commencement of any subsequent litigation based on the DNA test results, via a later-filed PCRA petition, awaits the outcome of the DNA testing, and the decision to commence such litigation is within the exclusive discretion of the successful movant who obtains DNA testing. *See* Appellee's Brief at 12 (DNA testing "might support a later claim for post-conviction relief."). It is entirely conceivable, then, that a movant who obtains DNA testing may subsequently elect not to pursue a PCRA petition for a variety of reasons. Thus, were a DNA testing order not to be final and appealable, the Commonwealth would be foreclosed in such circumstances from obtaining appellate review of the propriety of the original order granting the testing. Furthermore, although in the instant matter Appel-

lee is paying the costs of the DNA testing, in other situations where the Commonwealth is statutorily required to assume the costs of such testing, the Commonwealth would be forced to shoulder the burden of those costs, even if the testing has been ordered in error. Accordingly, while we express no opinion on the merits of the Commonwealth's substantive claim in the instant matter, we find that the Commonwealth was entitled to appellate review by the Superior Court of that claim.

The order of the Superior Court quashing the Commonwealth's appeal is, therefore, reversed, and this matter is remanded to the Superior Court for consideration of the substantive merits of the issues raised in that appeal. Jurisdiction is hereby relinquished.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justice SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.