J-S75014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: L.K.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PENNSYLVANIA STATE POLICE | |
| Appellant | No. 982 WDA 2019 |

Appeal from the Order Entered June 7, 2019
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CC 51-2018

BEFORE:    STABILE, KUNSELMAN, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED APRIL 17, 2020**

Appellant, Pennsylvania State Police ("PSP"), appeals from the June 7, 2019 order entered in the Court of Common Pleas of Allegheny County, granting L.K.P.'s petition for expunction of his involuntary commitments. PSP contends the trial court erred in granting the petition in light of L.K.P.'s failure to seek timely review of his commitment under Section 303 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7303. We agree. Therefore, we vacate the June 7, 2019 order and remand.

The record reveals that L.K.P. became intoxicated in the lower level of his home on January 6, 2018. As the trial court explained:

> [L.K.P.] became extremely intoxicated, and, at some point, while drunkenly stumbling and attempting to plug his [lawfully owned] firearm into his phone charger, told his wife to go upstairs. When

_____

[*] Retired Senior Judge assigned to the Superior Court.

[his] wife did so, [L.K.P.] turned off the electricity in the home. [L.K.P's] wife became sufficiently concerned that she called the police. However, the wife's concern was not that [L.K.P.] would threaten or harm her. Rather, [she] summoned the police because "I just didn't want any accident to happen." When the police arrived, they elected to transport [L.K.P.] to a local hospital. The record provides no account of any altercation with the police.

At the hospital, [L.K.P.'s] wife signed an application for involuntary emergency examination and treatment of [L.K.P.] pursuant to 50 P.S. § 7302. A physician's examination pursuant to that application was postponed due to [L.K.P.'s] acute intoxication. The results of the eventual examination noted that "The patient admits to feeling depressed. Admits to drinking alcohol excessively." [L.K.P.] denied, however, any suicidal ideation.

A recommendation for extended involuntary emergency treatment pursuant to 50 P.S. § 7303 was made by a physician who noted that [L.K.P.] had been violent and aggressive while in the emergency room. The matter thereafter proceeded to a hearing at which [L.K.P.] was represented by counsel from the Public Defender's Office. Although the examining psychiatrist testified that he had made no finding of a severe mental illness, [L.K.P.] was nonetheless certified [on January 8, 2018] for extended involuntary treatment on an outpatient basis.

Trial Court Opinion, 8/19/19, at 2-3 (footnote with reference to notes of testimony omitted).

Nearly four months later, on May 4, 2018, L.K.P. filed a petition to vacate and expunge his commitments and restore his rights. L.K.P. asserted that his initial admission to the hospital was based on excessive intoxication; that undisputed testimony from the January 8, 2018 hearing confirmed that he did not suffer from a severe mental disability; and that his counsel failed to seek dismissal of the commitment or inform him that the commitment would have an adverse effect on L.K.P.'s civil and constitutional rights.

Petition to Vacate and Expunge, 5/4/18, at ¶ 14. L.K.P. asked the court to expunge both his involuntary commitment pursuant to Section 302 and his involuntary commitment to outpatient treatment pursuant to Section 303. *Id.* at ¶¶ 17-18.

By order entered April 17, 2019, the trial court ordered expunction of L.K.P.'s Section 303 commitment. L.K.P. filed a motion for reconsideration, contending his Section 302 commitment should also be expunged. By order entered June 7, 2019, the trial court directed that documents related to both commitments be expunged. This timely appeal followed. Both the trial court and PSP complied with Pa.R.A.P. 1925.

PSP asks us to consider one issue in this appeal:

I. Did the trial court err when it reviewed L.K.P.'s involuntary commitments under Sections 302 and 303 of the Mental Health Procedures Act, 50 P.S. §§ 7302, 7303, when he did not seek timely review of his [Section] 303 commitment?

PSP Brief at 4.

PSP contends the trial court lacked jurisdiction over L.K.P.'s untimely challenge to his Section 303 commitment. PSP further argues that the trial court erred in expunging the Section 302 commitment in light of the existence of the Section 303 commitment. As such, PSP raises questions of law for which our standard of review is *de novo* and our scope of review is plenary. *In re J.M.Y.*, 218 A.3d 404, 415 (Pa. 2019).

In **J.M.Y.**, an individual who was committed under Section 302, and subsequently under Section 303, filed a petition to expunge his commitments more than two years after he was committed. The Court explained:

> The crux of PSP's challenge is that the trial court and, thus, the Superior Court lacked jurisdiction to consider [J.M.Y.'s] request to vacate his Section 303 commitment and expunge his mental health records. It is axiomatic that subject matter jurisdiction is the indispensable foundation of a court's power to adjudicate the issues in a particular case; thus, our Court will not consider the merits of a judgment of a lower court if that court lacked jurisdiction to render the judgment. **In re Leopardi**, 516 Pa. 115, 532 A.2d 311, 315 (1987) ("The power of the appellate court to modify a judgment is limited by the jurisdictional powers of the tribunal below. It can give no judgment on appeal which the lower court was incompetent to render."); **In re Petition of Accione**, 425 Pa. 23, 227 A.2d 816[, 820] (1967) (where lower court did not address the question of its jurisdiction to consider a petition and proceeded to decide its merits, our Court has the duty to determine whether that court had jurisdiction before deciding issues presented on appeal). Accordingly, the question of the subject matter jurisdiction of a court is nonwaivable, and, indeed, our Court is empowered to raise the issue *sua sponte.* **Commonwealth v. Scarborough**, 619 Pa. 353, 64 A.3d 602, 608 n.10 (2013).

**Id.**

As PSP recognizes, the Supreme Court in **J.M.Y.** reviewed the appropriateness of vacating a Section 303 commitment more than 30 days after its entry and rejected the premise that an individual may seek review of a Section 303 commitment—even on a constitutional basis—beyond the time

restraints imposed by Section 303(g).[1]  The Court determined that J.M.Y was

"subject to treatment" under Section 303(g) and, therefore, had the right to

petition the court of common pleas for review.  With regard for the timeframe

for doing so, the Court stated:

> Although it is true, as [J.M.Y.] argues, that Section 303(g) does not specify a time within which such a petition for review must be brought, we reject his contention that the time period for filing a petition under this section is essentially boundless.  As our Court recognized in **In re K.L.S.**, "[i]n proceedings under the MHPA, the case is . . . heard by the [mental health review officer], a law-trained, quasi-judicial officer who prepares a certification of findings 'as to the reasons that extended involuntary treatment is necessary [and] a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing.'"  [**In re K.L.S.**, 934 A.2d 1244, 1247-48 (Pa. 2007)] (quoting 50 P.S. § 7303(d)) (second alteration original).  We further held therein that the certification of the mental health review officer, as a quasi-judicial officer, constitutes a "final adjudication or determination" of a local agency or a Commonwealth agency.  **Id.** at 1248. Consequently, inasmuch as a mental health review officer is considered a local agency or

---

[1] This subsection provides:

> In all cases in which the hearing was conducted by a mental health review officer, a person made *subject to treatment* pursuant to this section shall have the right to petition the court of common pleas for review of the certification.  A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel.  The hearing shall include a review of the certification and such evidence as the court may receive or require.  If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition.  Otherwise, the person shall be discharged.

50 P.S. § 7303(g)--Petition to Common Pleas Court (emphasis added).

> Commonwealth agency, the mental health review officer must be classified as a government unit, *see* 42 Pa.C.S. § 102 (defining government unit, *inter alia*, as "any government agency"), and, under Section 5571(b) of the Judicial Code, "an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken," 42 Pa.C.S. § 5571(b). Appellee, therefore, had 30 days from the date of the mental health review officer's Certification to petition the court of common pleas for review of any due process or other challenges to the Certification. As he did not do so, but instead filed the instant petition over two years later, neither the court of common pleas nor the Superior Court had jurisdiction to consider the merits of these claims.

*Id.* at 418 (footnote omitted).

L.K.P. admits he did not petition the court of common pleas for review under Section 303(g). Reply to Answer and New Matter. 1/24/19, at ¶ 24. Just as in *J.M.Y.*, the failure to petition to court for review deprived the court of common pleas of jurisdiction to consider the merits of his claims. Therefore, we are constrained to vacate the June 7, 2019 order.

In *J.M.Y.*, the Court acknowledged the seriousness of J.M.Y.'s allegations that the procedural requirements of Section 303 were not followed in his case. *Id.* at 418. "Further, nothing in this Opinion should be construed as constraining Appellee's present ability to petition for review of the Certification *nunc pro tunc*, based on these alleged procedural irregularities." *Id.* (citing *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty.*, 746 A.2d 581, 582 (Pa. 2000) ("[I]n

civil cases, an appeal *nunc pro tunc* is granted only where there was fraud or a breakdown in the court's operations through a default of its officers.")).[2]

We similarly note that our ruling does not operate to prevent L.K.P. from seeking to petition the trial court *nunc pro tunc.* While L.K.P. proposes that we deem the trial court's interpretation of his petition as an appeal *nunc pro tunc*, we decline to do so. This is not a matter of simply "styling" a petition as *nunc pro tunc*, as L.K.P. suggests. As the Supreme Court recognized in its reference to **Union Elec. Corp.**, an appeal *nunc pro tunc* is to be granted only in situations involving fraud or a breakdown in the court's operations. **J.M.Y.**, 218 A.3d at 418. While L.K.P. asserts that the trial court

_____

[2] As the Court explained in **Union Elec. Corp.**,

> [a]llowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline. This Court has emphasized that the "principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." **Commonwealth v. Stock**, 545 Pa. 13, 19, 679 A.2d 760, 764 (1996). Generally, in civil cases, an appeal *nunc pro tunc* is granted only where there was "fraud or a breakdown in the court's operations through a default of its officers." **Bass** [**v. Commonwealth of Pennsylvania**, 401 A.2d 1133, 1135 (Pa. 1979)]; **see also** [**Commonwealth v. Stock**, 679 A.2d 760, 763 (Pa. 1996)]; **Hanoverian, Inc. v. Lehigh County Bd. of Assessment**, 701 A.2d 288, 289 (Pa. Commw. Ct. 1997) ("[A] court may not extend that time period or allow an appeal *nunc pro tunc* absent a showing that extraordinary circumstances involving fraud, or its equivalent, duress, or coercion caused the delay in filing an appeal.").

**Id.**, 746 A.2d 584.

"clearly viewed the matter of [L.K.P's] Petition below as essentially an Appeal Nunc Pro Tunc and addressed it as such," Appellee's Brief at 5, the trial court did not undertake any analysis of whether any fraud or breakdown in the court's operations would warrant consideration of the petition *nunc pro tunc*.[3]

We similarly decline J.K.P's invitation to find that ***J.M.Y.*** announces a "new procedural doctrine" warranting prospective application only. In ***J.M.Y.***, the Court explained that while Section 303(g) did not specify a period of time during which a petition for review must be brought, a 30-day period for requesting review is consistent with the Court's decision in ***In re K.L.S.***, 934 A.2d 1244 (Pa. 2007) read in conjunction with 42 Pa.C.S.A. § 5571. ***J.M.Y.***, 214 A.3d at 814.

Therefore, we vacate the June 7, 2019 order directing expunction of documents relating to L.K.P.'s commitments under both Section 302 and 303. Case remanded. Jurisdiction relinquished.

Judge Kunselman joined the memorandum.

Judge Pellegrini concurs in the result.

---

[3] We remind counsel for J.K.P. that the text in briefs filed with this Court is to be double-spaced. ***See*** R.A.P. 124(a)(3).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2020