J-A14011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD LUCKETT | : | |
| | : | |
| Appellant | : | No. 1503 MDA 2021 |

Appeal from the PCRA Order Entered October 19, 2021
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0001573-1995

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED: SEPTEMBER 22, 2022**

Appellant, Edward Luckett, appeals from the post-conviction court's order denying, as untimely, his tenth *pro se* petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.  After careful review, we affirm.

This Court recently summarized the factual and tortured procedural history of this case as follows:

> [O]n October 28, 1990, [A]ppellant, along with Andrew Dillon and another man, went to the home of 86[-]year[-]old Agnes DeLuca in order to rob her.  Dillon broke a window, opened the door, and let the group in. Once inside, DeLuca screamed.  Appellant grabbed DeLuca around the neck to quiet her and in doing so broke her neck and paralyzed her.  They laid DeLuca on her bed while they looked around for valuables that they stashed in a pillowcase.  They beat her with blunt force in the head, stabbed her five times in the neck and twice in the back.

_____

[*] Former Justice specially assigned to the Superior Court.

The three individuals then anally raped and asphyxiated her. Her body was found two days later.

***Commonwealth v. Luckett***, 768 A.2d 885 (Pa. Super. 2000) (unpublished memorandum), *appeal denied*, 792 A.2d 1255 (Pa. 2001).

Between 1990 and 1995, Appellant at different times and in different prisons, made detailed statements to three inmates implicating himself in the victim's murder. ***Id.*** In addition to his revealing discussions with fellow inmates, Appellant made incriminating statements to two detectives during an interview at the State Correctional Institution at Greene. ***Id.*** During trial, the Commonwealth did not use the hair, blood, or semen samples collected from the crime scene, autopsy, or rape kit, to inculpate Appellant in the murder.[1] Rather, the prosecution relied upon Appellant's own statements, the testimony of other witnesses, and other circumstantial evidence in proving the charges against Appellant.

[1] None of the forensic testing of the crime scene or the victim's rape kit tied Appellant to the crime. Appellant's blood type did not match any of the blood found at the scene. ***See*** N.T. Jury Trial, 11/5/98, at 125, 127, 136-37, 141-42, 145 (Pennsylvania State Police Analyst George Surma testifying that Appellant's blood type was not found on any items at the crime scene). DNA testing of the sperm found on and inside the victim was inconclusive. N.T. [Jury Trial,] 11/6/98, at 157. Finally, while the mitochondrial DNA found on hair collected from the victim was consistent with co-defendant Andrew Dillon, it was not a match for Appellant. ***See*** N.T. Jury Trial, 11/6/98, at 125, 136-39.

On November 18, 1998, Appellant was convicted of first-degree murder, conspiracy to commit first-degree murder, robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, and conspiracy to commit causing or risking a catastrophe.[2] On January 22, 1999, Appellant was sentenced to a term of life imprisonment followed by several consecutive state sentences. This Court affirmed the judgment of sentence and Appellant's petition for allowance of appeal was denied on December 5, 2001. ***See Commonwealth v. Luckett***, ***supra***, *appeal denied*, 792 A.2d 1255 (Pa. 2001). Appellant sought no further review. Thus, his judgment of sentence became final ninety days later on March 5, 2002. ***See*** 42 Pa.C.S. § 9545(b)(3).

[2] Charges relating to the rape of the victim were withdrawn pre-trial, after the Commonwealth was unable to forensically link Appellant to the sexual assault of the victim.

On December 14, 2001, Appellant filed a timely[,] *pro se* PCRA petition, raising many claims of trial counsel ineffectiveness and attaching the results of the polymer chain reaction DNA testing to his petition. New counsel was appointed and a hearing was held. At the hearing, Appellant testified, in part, that the DNA sperm test results excluded him as a potential contributor and that his counsel was ineffective for failing to subpoena the DNA expert who performed the testing in his case.[3] N.T. PCRA Hearing, 8/8/03, at 8-13. In 2005, new counsel was appointed and a supplemental amended first PCRA petition was filed with leave of court.[4] One of Appellant's eleven ineffective assistance of counsel claims challenged trial counsel's effectiveness in investigating and cross-examining a forensic expert on the significance of the "inconclusive" sperm DNA testing results. On October 14, 2005, a second hearing was held, at which Appellant and his prior counsel testified. In December of 2005, the judge who presided over Appellant's trial and initial PCRA proceedings retired. The case was reassigned, and in 2007, the new PCRA court denied Appellant's PCRA petition by memorandum and order. After a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), Appellant timely appealed to this Court [and we affirmed]. ***See Commonwealth v. Luckett***, 963 A.3d 568 (Pa. Super. 2008) (unpublished memorandum). On February 18, 2009, our Supreme Court denied Appellant's petition for allowance of appeal. ***See Commonwealth v. Luckett***, 965 A.2d 245 (Pa. 2009).

[3] In fact, the DNA test results were inconclusive. N.T. Jury Trial, 11/6/98, at 133-34 (Special Agent Mark Wilson conducting DNA testing on body hair from the crime scene and testif[ying] that he did not conduct DNA testing of the sperm because "it did not meet the unit's case acceptance policy[]"); *id.* at 156-57 (Detective Carlson testified that he sent the sperm to Dr. Blake in California, before sending it to the FBI, and then to Cellmark in Maryland. "We were not able to identify any donor or donors with regard to that testing.").

[4] While the petition remained pending in the PCRA court, Appellant filed a second[,] *pro se* PCRA petition which the PCRA court dismissed. We affirmed that decision on appeal.

- 3 -

*See Commonwealth v. Luckett*, 869 A.2d 10 (Pa. Super. 2004) (unpublished memorandum) (affirming dismissal of second PCRA petition while first PCRA petition was still pending).

In 2009, Appellant filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania, in which he also challenged counsel's effectiveness in his cross-examination of Agent Wilson regarding the presence of sperm on the victim's body. *See Luckett v. Folino*, No. 09-0378, 2010 WL 3812329 (M.D.Pa. 2010) (denying objections to report and recommendation). This petition was denied.[5] *Id.* Appellant subsequently filed nine PCRA petitions, none of which requested DNA testing or was successful in attacking his convictions or sentence. *See Commonwealth v. Luckett*, 4 A.3d 701 (Pa. Super. 2010) (unpublished [memorandum]) (affirming dismissal of second PCRA petition); *Commonwealth v. Luckett*, 82 A.3d 465 (Pa. Super. 2013) (unpublished memorandum) (affirming dismissal of third PCRA petition); *Commonwealth v. Luckett*, 106 A.3d 170 (Pa. Super. 2014) (unpublished memorandum) (affirming dismissal of fourth PCRA petition); *Commonwealth v. Luckett*, 153 A.3d 1114 (Pa. Super. 2016) (unpublished memorandum) (affirming dismissal of fifth PCRA petition), *appeal denied*, 170 A.3d 1063 (Pa. 2017); *Commonwealth v. Luckett*, 194 A.3d 682 (Pa. Super. 2018) (unpublished memorandum) (affirming dismissal of sixth, seventh, and eighth PCRA petitions); *Commonwealth v. Luckett*, 222 A.3d 792 (Pa. Super. 2019) (unpublished memorandum) (affirming dismissal of ninth PCRA petition).[6]

[5] In its report and recommendation, the Magistrate Judge noted that "[Appellant] has been a prolific, if procedurally chaotic, litigant, which has complicated these proceedings by greatly confusing the procedural posture of this case." *Luckett v. Folino*, No. 09-0378, 2010 WL 3812329 (M.D.Pa. 2010), *adopted*, 2010 WL 3806822, at *2 (M.D. Pa. Sept. 23, 2010). Reviewing the record over ten years later, we too found our review of Appellant's claims complicated substantially by Appellant's repeated practice of filing new PCRA petitions while a previous petition was still pending.

[6] In his ninth PCRA petition, Appellant raised a claim of newly discovered evidence on the basis of a Washington Post article discussing deficiencies in FBI training in hair and

blood analysis. When affirming the dismissal of this petition, we pointed out that "Appellant [had] not asserted in the instant Petition that his conviction relied upon faulty DNA analysis." *See Commonwealth v. Luckett*, 222 A.3d 792 (Pa. Super. 2019) (unpublished memorandum at 8).

On February 3, 2020, in addition to submitting his tenth *pro se* PCRA petition, Appellant filed [a] petition seeking to have certain evidence submitted for DNA testing pursuant to 42 Pa.C.S. § 9543.1, which governs requests for post-conviction DNA testing. While this motion was filed simultaneously with Appellant's tenth PCRA petition, the PCRA court correctly treated it as an independent filing. On July 9, 2020, the PCRA court issued a memorandum and order denying Appellant's petition for DNA testing after determining that the request was untimely.

*Commonwealth v. Luckett*, No. 987 MDA 2020, unpublished memorandum at 1-6 (Pa. Super. filed July 22, 2021) (footnote omitted). On July 22, 2021, this Court affirmed the PCRA court's July 9, 2020 order denying Appellant's February 3, 2020 Section 9543.1 petition. *Id.* at 18.

Appellant's instant appeal concerns his tenth, *pro se* PCRA petition (hereinafter "Tenth Petition"), also filed on February 3, 2020. On July 9, 2020, the PCRA court issued a notice of its intent to dismiss the Tenth Petition without a hearing pursuant to Pa.R.Crim.P. 907 (hereinafter "Rule 907 Notice"). On October 7, 2021, Appellant filed objections to the Rule 907 Notice. The PCRA court then denied the Tenth Petition by order dated October 19, 2021. Appellant filed a timely, *pro se* notice of appeal from that order, as well as an unprompted Pa.R.A.P. 1925(b) statement, on November 15, 2021. The PCRA court issued a statement pursuant to Rule 1925(a), indicating that it was relying on the rationale set forth in the Rule 907 Notice in dismissing

the Tenth Petition. Appellant now presents five claims for our review.[1] Appellant's Brief at 4.

Generally, this Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). However, we must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this

---

[1] Appellant's statement of the issues is convoluted, to say the least. To the extent possible, we have strained to discern his claims for purposes of the proceeding analysis.

Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, Section 9545(b)(2) requires that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Appellant's judgment of sentence became final on March 5, 2002. Consequently, his Tenth Petition, filed on February 3, 2020, is patently untimely. Accordingly, Appellant was required to successfully avail himself of one of Section 9545(b)(1)'s exceptions to the PCRA's time-bar in order for the PCRA court to have jurisdiction to entertain his Tenth Petition. In the Tenth Petition, Appellant specifically invoked the government-interference exception set forth in Section 9545(b)(1)(i) to excuse the untimeliness of his petition. Tenth Petition, 2/3/20, at 1 ¶ 1.

Nevertheless, in Appellant's first three issues, he presents a myriad of arguments as to why his Tenth Petition is timely (or that its untimeliness is excused) under the auspices of 42 Pa.C.S. § 9543.1 ("Post[]conviction DNA testing"). Under that statutory authority, an

individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

42 Pa.C.S. § 9543.1(a)(1).  However, this Court has previously recognized that:

Post[]conviction DNA testing does not directly create an exception to § 9545's one-year time bar.  *See* 42 Pa.C.S.[] § 9543.1.  Rather it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.[] § 9545(b)(2).

*Commonwealth v. Weeks*, 831 A.2d 1194, 1196 (Pa. Super. 2003).

Furthermore, "the litigation of a motion for DNA testing under Section 9543.1 is, in substance, a wholly separate proceeding from litigation of a PCRA petition." *Commonwealth v. Scarborough*, 64 A.3d 602, 609 (Pa. 2013).

Our Supreme Court further explained in *Scarborough*:

Although Section 9543.1(f)(1) permits a convicted individual who successfully obtains DNA testing to, at his or her option, file a subsequent PCRA petition based on the test results, it does so by explicitly referencing Section 9543(a)(2)(vi) of the PCRA and directing that the petition be filed pursuant to that subsection. *See* 42 Pa.C.S.[] § 9543.1(f)(1) ("After the DNA testing conducted under this section has been completed, the applicant *may* ... petition to the court for postconviction relief pursuant to Section 9543(a)(2)(vi).") (emphasis added).  Hence, the filing of a later PCRA petition by the successful movant constitutes the commencement of separate and new litigation, which, as discussed above, has as its ultimate object the grant of a new trial, discharge from the underlying conviction, or modification of the petitioner's sentence, and this subsequent PCRA petition will be considered according to the standards for obtaining relief under Section 9543(a)(2)(vi) of the PCRA.

*Id.* at 610.

> Consequently, because the only claim at issue in a motion for post-conviction DNA testing is a convicted individual's eligibility for such testing under … Section 9543.1, when the trial court enters an order either granting or denying the testing, the litigation under this section is at an end: the sole claim between the parties—the Commonwealth and the movant—has been addressed by the trial court and finally disposed of.

*Id.* at 609.

Here, the PCRA court denied Appellant's Section 9543.1 petition filed on the same day as the Tenth Petition. This Court subsequently affirmed the denial of the Section 9543.1 petition on July 22, 2021. *Luckett*, No. 987 MDA 2020, unpublished memorandum at 18. Thus, the sought-after DNA testing was not conducted and, therefore, there is no new DNA evidence for this Court to consider with respect to Appellant's Tenth Petition. Appellant cannot now invoke the more liberal timeliness requirements of Section 9543.1 to excuse his Tenth Petition, as that statute only provides an opportunity to discover DNA evidence that might ultimately circumvent the PCRA's timeliness requirements in Section 9545(b).[2] We affirmed the court's denial of Appellant's request for DNA testing in his previous appeal and, therefore, he cannot demonstrate any Section 9545(b) exception on that basis. Moreover, Appellant previously litigated the issues related to the PCRA court's denial of his Section 9543.1 petition in that previous appeal. Accordingly, even if the PCRA court was not jurisdictionally barred under Section 9545(b) from

---

[2] In any event, Appellant exclusively raised the government-interference exception in the section of the Tenth Petition addressing the timeliness of the petition. Tenth Petition, 2/3/20, at 1 ¶ 1. Appellant's first three claims appear to be conflating the two petitions.

reaching the merits of the various claims raised under the rubric of Appellant's first three issues, Appellant would not be entitled to relief because those claims were previously litigated. ***See*** 42 Pa.C.S. § 9543(a)(3) (stating that ***eligibility for relief*** under the PCRA is predicated on proof that "the allegation of error has not been previously litigated or waived").[3]

In his fourth and fifth issues, Appellant finally addresses the government-interference exception (Section 9545(b)(1)(ii)) that he actually raised in his Tenth Petition. Therein, Appellant claimed that, on April 2, 2019, he discovered an article[4] (hereinafter "CLN Ski-Mask Article"), passed along to him from a fellow inmate. Tenth Petition, 2/3/20, at 2 ¶ 2. The CLN Ski-Mask Article described a federal government study conducted by the Commerce Department (hereinafter "Ski-Mask Study"), which, according to the author, was withheld from publication for five years before it was "eventually published on August 1, 2018, in the journal Forensic Science International: Genetics." CLN Ski-Mask Article at 14.

The PCRA court rejected this claim, first finding that under Section 9545(b)(2), Appellant was "out of time to raise alleged general deficiencies

_____

[3] Similarly, this Court is barred from addressing those claims under the law of the case doctrine. ***See Commonwealth v. Gacobano***, 65 A.3d 416, 420 (Pa. Super. 2013).

[4] Steve Horn, *U.S. Government Lab Withheld Groundbreaking Study for 5 Years That Can Help Defendants Question the Reliability of Certain DNA Evidence*, Criminal Legal News, March 2019, p. 14, https://www.criminallegalnews.org/news/2019/feb/14/us-government-lab-withheld-groundbreaking-study-5-years-can-help-defendants-question-reliability-certain-dna-evidence/ (last accessed on August 18, 2022).

with DNA testing that came to light in 2018 [in the Ski-Mask Study]. He certainly could have ascertained this information by the exercise of due diligence prior to this time." Rule 907 Notice, 7/9/20, at 5. The PCRA court reached this conclusion without holding an evidentiary hearing. We note that "we review [a PCRA court's] dismissal without a hearing 'to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact'" to resolve at an evidentiary hearing. ***Commonwealth v. Brown***, 248 A.3d 465 (Pa. Super. 2021), *appeal denied*, 259 A.3d 340 (Pa. 2021) (quoting ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*)).

We cannot affirm based on the PCRA court's due-diligence rationale for dismissing the Tenth Petition as untimely without a hearing. Due diligence entails "neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Shiloh***, 170 A.3d 553, 558 (Pa. Super. 2017) (citation omitted). The article in question was not published until March of 2019, and Appellant filed the Tenth Petition less than a year later, on February 3, 2020. On that timeline, Appellant satisfied Section 9545(b)(2)'s one-year deadline.

We acknowledge that the CLN Ski-Mask Article indicated that the Ski-Mask Study was first published on August 1, 2018. Even if we were to use that earlier date as the reference point for purposes of Section 9545(b)(2), we are wholly unconvinced by the limited record before us that Appellant, an

inmate acting *pro se*, necessarily could have filed a petition premised on the Ski-Mask Study at an earlier time through the exercise of **reasonable** efforts.[5] Appellant averred facts in his Petition that he first learned of the study through his fellow inmate's sharing with him the CLN Ski-Mask Article on April 2, 2019. Given that factual averment, there was a genuine issue of material fact regarding whether Appellant acted with due diligence in discovering the Ski-Mask Study. Accordingly, the PCRA court should not have dismissed the Tenth Petition without a hearing based on that rationale.

Nevertheless, we conclude the PCRA court did not err in dismissing the Tenth Petition as untimely without a hearing because, even if Appellant had acted diligently in his discovery of the Ski-Mask Study, he still did not plead and prove the applicability government-inference exception.[6]

---

[5] Given its failure to hold an evidentiary hearing to address whether Appellant acted with due diligence in discovering the underlying study, and given its cursory analysis on this matter, the PCRA court appears to have implicitly applied a presumption that petitioners who are acting *pro se* from the confines of prison are assumed to be aware of any new fact at the moment it becomes a matter of public record. The rationale behind such a presumption was expressly rejected by our Supreme Court in **Commonwealth v. Burton**, 158 A.3d 618 (Pa. 2017), with respect to due-diligence analyses raised under the newly-discovered fact exception, which is analogous to the circumstances here.

[6] "We may affirm the decision of the PCRA court if there is any basis on the record to support the PCRA court's action; this is so even if we rely on a different basis in our decision to affirm." **Commonwealth v. Wiley**, 966 A.2d 1153, 1157 (Pa. Super. 2009) (cleaned up).

Further discussion of the Ski-Mask Study is warranted at this point in our analysis. As described in the CLN Ski-Mask Article, the Ski-Mask Study involved the following circumstances and findings:

The case study that piqued the interest of most within the forensic science community … was Case Five, which will likely become known as the ski-mask scenario both in the science world and by lay people.

"Several gang-related robberies have targeted multiple banks in the city. The robberies have typically involved two or three perpetrators. A ski mask was recovered in a trash can one block away from the latest bank robbery and is submitted for DNA testing," the study explains of the case study set-up. "Evidence is a DNA profile developed from a ski mask recovered near a bank robbery scene. A confidential informant has implicated two suspects … in at least three of the armed robberies. Police have obtained buccal swab references from the two suspects identified from the informant, and another known accomplice of the suspects."

The result? It put someone at the scene of this hypothetical crime who was not even part of the original four people known to have been there to begin with.

\*\*\*

"The fabric showed a mixture of touch DNA including four people, but due to its complexity, it initially appeared as a mixture of only two people," explained the publication Forensic Magazine of the study. "The labs were given two of the four likely contributors, along with a fifth person. But that fifth person was not in the mixture, and had never touched the ski mask…. Seventy-four laboratories out of 108 got it wrong by including the fifth person in their interpretation."

Indeed, only seven out of the 108 laboratories got things "right" using the FBI's methodology for testing DNA, known as CPI, or combined probability of inclusion. And even in those, Forensic Magazine explained, the labs had differing reasons as to why it transpired that way.

CLN Ski-Mask Article at 14.

In other words, in the Ski-Mask Study, DNA labs were provided with several DNA samples from persons known to have been in contact with the tested item (the guilty subjects), as well as a DNA sample from a person known to not have touched the item (the innocent subject). *See id.* The labs were directed to compare DNA samples taken from the item to the DNA samples taken from the test subjects. *See id.* Shockingly, an overwhelming majority (74/108, or 68.5%) of DNA labs involved in the study produced results falsely implicating the innocent subject as a contributor the DNA sample taken from the tested item. *See id.*

Appellant avers that the circumstances involved in the Ski-Mask Study are "closely related" to the circumstances of his case. Tenth Petition at 4. He also asserts that Assistant District Attorney ("ADA") Eugene Talerico, who prosecuted Appellant at his 1998 trial, and/or the Lackawanna County District Attorney's Office, and/or the United States Commerce Department, "made no attempt" to inform him of the Ski-Mask Scenario and the related, peer-review studies. *Id.* at 5-6 ¶ 6. He further alleges that due to the five-year delay by the Commerce Department, and ADA Talerico's lack of action,[7] he was unable to develop claims with respect to various pieces of physical evidence used in the prosecution of the case against him and his co-conspirators. *Id.* at 6 ¶ 7.

_____

[7] Appellant makes no attempt to explain how ADA Talerico and/or the Lackawanna County District Attorney's Office were aware of, much less responsible for, the content of the Commerce Department's study, or the five-year delay referred to in the CLN Ski-Mask Article.

Regarding the government-interference exception, Appellant is unclear as to what legal "claims" were interfered with due to the delay in publication of the Ski-Mask Scenario, other than to vaguely reference the physical evidence involved in his case. We can only presume that Appellant means that he would have sought DNA testing, or additional DNA testing, of the physical evidence related to crimes for which he was convicted. However, as discussed by this Court in the appeal of his Section 9543.1 petition, there has never been DNA tying Appellant to the crimes for which he was convicted, and this fact was known to the jury that convicted him.[8] Thus, the Ski-Mask Study did not involve circumstances analogous to the DNA evidence involved in Appellant's case, as Appellant was not convicted based on DNA evidence at all. Stated another way, the chance that Appellant was falsely implicated by DNA evidence, such as was involved in the Ski-Mask Study, is precisely nil. Accordingly, Appellant's attempt to invoke the government-interference exception to excuse the untimeliness of his Tenth Petition based on his discovery of the Ski-Mask Study is meritless and borders on frivolity. None of the government parties identified by Appellant had any duty to inform him of the Ski-Mask Study at any time, because the study did not involve any issues related to his conviction.

For these reasons, we agree with the PCRA court that Appellant would not have been entitled to relief even if he could meet a timeliness exception.

---

[8] *See Luckett*, No. 987 MDA 2020, unpublished memorandum at 2 n.1.

*See* Rule 907 Notice at 6 (stating Appellant "cannot claim to have been prejudiced by the DNA testing that was done since none of it implicated him" and "the absence of [Appellant]'s DNA and detection of other third parties' DNA does not prove that [Appellant] was absent [from the scene of the crime"). Appellant has failed to demonstrate any possibility of establishing that his "conviction … resulted from one or more" of the circumstances listed in 42 Pa.C.S. § 9543(a)(2).

Order *affirmed*.

Judge Stabile joins this memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/22/2022